**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFERSON BLADIMIR ALEMAN-BELTRAN,<br>Petitioner,<br>v.<br>FREITI SEMAI ET AL.,<br>Respondents. | Case No. 5:26-cv-04777-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner, Jefferson Bladimir Aleman-Beltran ("Petitioner"), is a native and citizen of El Salvador. who is currently in custody at the Adelanto Ice Processing Center in Adelanto, California. (Dkt. No. 1.)

On August 21. 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing Respondents unlawfully detained Petitioner without an arrest warrant in violation of § 1226(a),

§ 1357(a)(2), and in violation of his Fifth Amendment due process rights. (Dkt. No. 1.) In their Answer, Respondents did not present opposition to Petitioner's due process claim. (Dkt. No. 8) For the reasons set forth below, the Court **GRANTS** the habeas petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner entered the United States without inspection on or about April 22, 2021, and was released on an Order of Recognizance ("OREC"). (Dkt. No. 1 at 4.) Petitioner resided continuously in Santa Maria, California where he lived and worked. *Id.* Petitioner was granted a Deferred Action based on his Special Immigration Status (I-797) for a period of four years from December 10, 2022, unless terminated earlier by U.S. Citizenship and Immigration Services ("USCIS"). (Dkt. No. 1 at 5; Dkt. No. 1-2.) He was also granted a work permit from February 15, 2024, to December 10, 2026. (Dkt. No. 1-2.) To date, USCIS has not revoked his deferred action or immigration status. (Dkt. No. 1 at 5.)

On July 21, 2026, Petitioner was arrested by local law enforcement for an allegation of rape under Penal Code Section 261(a)(2). *Id.* Petitioner was released from custody by a Superior Court Judge in Santa Maria on July 24, 2026. *Id.* As he was exiting the county jail, agents from U.S. Immigration Customs Enforcement ("ICE") approached and immediately detained him. *Id.* Petitioner asserts that ICE agents did not present or possess a warrant. *Id.* During the arrest, ICE officers "used significant physical force against Petitioner, including kicking him." *Id.* at 6. Petitioner alleges that he was not resisting arrest or attempting to flee when the force was used. *Id.* The force used against Petitioner caused injuries serious enough to require medical attention. *Id.* Petitioner was transported to a hospital for medical evaluation and treatment. *Id.*

Petitioner alleges that Respondents did not obtain a pre-arrest administration warrant or provide Petitioner with any individualized determination that he was likely to escape before a warrant could be obtained. *Id.*

In their Answer, Respondents state that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026)," and "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Dkt. No. 8.) Respondents also argued that Petitioner has not yet properly exhausted his available administrative remedies. *Id.* Respondents state that Petitioner has not shown that Respondents lack authority to detain him, citing to an arrest for allegedly violating California Penal Code Section 261(a)(2) and 289(a)(1)(A) as a changed circumstance. (Dkt. No. 8.)

Respondents provide the I-213 which states that Petitioner's arrest was pursuant to a warrantless arrest. (Dkt. No. 8-1.) It further states that a SDDO Romero "signed a Warrant for Arrest of Alien, Form I-200, at the time of arrest" but states that the effort was to identify and arrest an individual named Juan Espinoza Ornelas (A#070 712 094). (Dkt. No. 8-1 at 2.) At approximately 9:00 a.m., "Deportation Officers observed a male fitting the physical description of Aleman's height and weight, subject later identified as Aleman Beltran Jefferson Bladmir with (A220181828) exiting a secure facility." *Id.* The I-213 further states that Petitioner verified his country of origin and that he was not able to show he had documents to remain in the United Staes legally. *Id.* He was transported without incident for processing. *Id.* Respondents further state that

Petitioner appeared to have fallen and caught himself before impact. *Id.* at 3. Petitioner purportedly told officers he felt like he fainted. *Id.* "At approximately 1035, Petitioner appeared to be slumped over to his side" and requested medical attention. *Id.* EMS was contacted and he was transported to Marian Medical Hospital for treatment. *Id.* at 4.

The I-213 form also documents that on April 24, 2021, Petitioner was arrested at or near Hidalgo, Texas and was released on an Order of Recognizance on May 14, 2021. *Id.* at 3. On January 20, 2022, Petitioner was issued a Notice to Appear and an immigration judge ("IJ") terminated proceeding on October 13, 2022. *Id.* USCIS, on December 10, 2022, approved an I-360. *Id.*

Petitioner argues in the Reply that the Respondents did not present opposition to Petitioner's due process claim or the warrantless search violation under §§ 1226(a) and 1357(a)(2). *Id.* (Dkt. No. 9.) Petitioner argues he is not required to exhaust administrative remedies for his constitutional claims. (Dkt. No. 9 at 2.) Additionally, Petitioner argues that a bond hearing would not cure Petitioner's constitutional violations. *Id.*

Petitioner filed the instant habeas petition on August 21, 2026. (Dkt. No. 1 ("Petition").) Respondents filed their Answer or Reply on August 31, 2026. (Dkt. No. 8 ("Answer").) Petitioner filed A Traverse to Return in Support of Petition for Writ of Habeas Corpus. (Dkt. No. 9 ("Reply").) Thus, the matter is fully briefed.

On August 27, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 7.)

On October 9, 2026, Petitioner filed a Request for Ruling Petition for Writ of Habeas Corpus. (Dkt. No. 10.) With entry of this Order and

Judgment, Petitioner's request is addressed and rendered moot.

## III. DISCUSSION

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A petitioner held in custody in violation of the Constitution or federal law is entitled to habeas relief. *See* 28 U.S.C. § 2241(c)(3). Due process, which extends to noncitizens present in the United States, prohibits deprivations of life, liberty and property without due process of law. *See* U.S. Const. amend. V; *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001). Due process requires that a person be afforded notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Respondents concede that Petitioner is a 1226(a) detainee and appears to be entitled to a bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). (Dkt. No. 7.) Respondents did not address Petitioner's due process claim. (Dkt. No. 8.) Respondents' choice to not oppose Petitioner's due process claim in their Response is in effect a concession that the Petition should be granted. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15,

2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (noting that "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under § 1226(a) and its implementing regulations, a Department of Homeland Security ("DHS") officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers are to conduct an initial custody determination to decide whether to release or

detain the person under § 1226. 8 C.F.R. § 236.1(c)(8). Unless the person is subject to mandatory detention under § 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g).

### A. Due Process Requires a Determination that Detention is Warranted under 8 U.S.C. § 1226(a)

While § 1226(a)'s "extensive procedural protections" arise from the statute and its regulations, they are also grounded in due process principles. The Supreme Court has recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v.Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. "In the context of immigration detention, it is well settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (citation modified). *See also Padilla v. United States Immigr. & Customs Enf't*,

No.24-2801, 2026 WL 2822044, at *16 (9th Cir. Sept. 21, 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens). Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances its legitimate interests in preventing danger and flight.

Unlike individuals subject to mandatory detention under § 1226(c), Congress has not required the detention of individuals detained under § 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Instead, § 1226(a) provides immigration authorities with the discretion to detain or release such individuals "pending a decision on whether" they are "to be removed from the United States." 8 U.S.C. § 1226(a). It follows that due process requires the Government to exercise this discretion and determine, on an individualized basis, whether to detain or release a noncitizen under the statute. Otherwise, a noncitizen subject to § 1226(a) would be effectively subject to mandatory detention, in direct contravention of Congress's determination that detention under § 1226(a) is not required. There would also be an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk."). For these reasons, courts have found

that noncitizens are "entitled to the procedural protections provided by §1226(a), not merely by statute and regulation, but also by the Due Process Clause." *Garcia-Maya v. Blanche*, No. 2:26-CV-01513-RFB-BNW, 2026 WL 1965886 at *5 (D. Nev. July 7, 2026); *Bautista v. Santacruz*, 813 F.Supp. 3d 1084, 1094 (C.D. Cal. 2025) (discussing "the due process protections found within § 1226(a)").

Respondents do not assert that Petitioner is subject to mandatory detention. In fact, Respondents concede that Petitioner is subject to § 1226(a)'s discretionary detention. (Dkt. No. 8.)

Here, Respondents records reflect that Petitioner was arrested without a warrant. (Dkt. No. 8.) While an I-200 form is referenced in the I-213, it appears to be related to a different individual, Juan Ornales. (Dkt. No. 8-1 at 2.) Since Respondents' own documents clearly state that a warrantless arrest was made of the Petitioner, the Court finds that the Petitioner was arrested without a warrant.

For individuals taken into custody, the regulations require that DHS must conduct a prompt custody review and, if it determines that detention is warranted, provide the individual with an opportunity to request IJ review at a bond hearing. These procedures serve several important due process purposes. The initial custody review ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also requires DHS to provide written justification for a decision to detain and "create[s] a record that permits

meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D.Pa. June 17, 2026) ("A contemporaneous, individualized custody determination require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). The initial custody determination is also the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8. Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr., et al.*, No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s "substantial procedural protections," . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.'") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

Without an initial custody determination, then, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified. In light of the critical importance of the procedures available under § 1226(a) at the outset of an individual's detention, numerous courts have recognized that

"section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D.Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609,at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v.Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFBBNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight, et al.*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL1453889, at *4 (E.D.N.Y. May 22, 2026).

Petitioner was not afforded the due process he was owed as a § 1226(a) detainee. Individuals held in custody must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination

within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d). The noncitizen has the opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding," *see* 8 C.F.R. § 1236.1(c)(8).

Respondents did not provide Petitioner with an initial custody determination and an opportunity to demonstrate that he did not pose a flight risk. (Dkt. No. 8.) Respondents do not otherwise contend that Petitioner's detention was effectuated based on probable cause or that he is a flight risk. To the contrary, Respondents intended to arrest, with an I-200 warrant, a person named Juan Espinoza Ornelas (A#070-712-094). It was during that arrest that the detention officer approached the Petitioner without probable cause or a warrant. While the I-213 states that Petitioner was not able to present documents of his immigration status, Respondents' own documents show that Petitioner has an approved I-360, which is his Deferred Action based upon a Special Immigration Status. (Dkt. No. 8.)

Respondents did not comply with § 1226(a)'s requirements. Thus, Petitioner's detention has been "unlawful from the outset." *Orea Ruiz v. Acting Warden, Adelanto Det. Ctr.*, No. 5:26-CV-04807-MBK, 2026 WL 2644102, at *7 (C.D. Cal. Sept. 8, 2026); *see Torres Huerta v. Facility Adm'r, Cent. Valley Annex ICE Processing Ctr.*, No. 1:26-cv-04609 (VC), 2026 WL 2751763, at *1 (E.D. Cal. Sept. 16, 2026) (finding that, because respondents "have not argued that Petitioner was provided the process to which he was statutorily entitled to under § 1226(a)" and under § 1357(a)(2), "or that Petitioner may be a danger to the community or

flight risk if released, his continued detention without any kind of custody determination is unlawful"); *Zurita Navarro*, 2026 WL 2294963, at *2 (finding petitioner's detention unlawful where respondent failed to provide a warrant of arrest, to indicate whether an authorized immigration official made an initial custody determination, or to provide the basis for custody or whether petitioner had notice).

**B. Petitioner's Detention Violates the 5th Amendment**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

When Respondents released Petitioner from custody on an Order of Recognizance and granted him Deferred Action status, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

Respondents' choice to not oppose Petitioner's due process claims in

their Answer is in effect a concession that the Petition should be granted. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (noting that "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Regardless, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in); *see also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025),

*adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

1. ***Constitutionally Protected Liberty Interest***

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. "Even

individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33 (N.D. Cal. 2025) (collecting cases). Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

### 2. ***Procedural Protections***

#### a) **Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

As in this case, a person who is "free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

Consistent with this conclusion, multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before his recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two

years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

Here, after his initial detention on April 24, 2021, Petitioner was released on May 14, 2021, on an OREC. (Dkt. No. 8) Moreover, Petitioner was granted a Deferred Action and given a work permit. Petitioner had spent nearly all his approximately four (4) years in the United States free from confinement. *Id*. Thus, Petitioner has a liberty interest in remaining out of immigration custody. The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining his freedom from confinement.

**b) Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of [his] liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was

released on conditional parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The risk of wrongful deprivation is especially high here given evidence that Petitioner has been given Deferred Action status and a work permit. He was not subject to any check-ins and lived freely for over four years. Respondents exercised prosecutorial discretion and deferred his removal for a four-year period, and approved a work permit.

Respondents argue that Petitioner had a changed circumstance due to his recent arrest. (Dkt. No. 8.) If that is the case, then Petitioner was entitled to notice and a pre-deprivation process given the concession by the Respondents that Petitioner is a § 1226(a) detainee and given a Deferred Action. Moreover, Petitioner was arrested without a warrant, without probable cause, and without a flight risk assessment. (Dkt. Nos. 1 & 8.)

Based on this record, the Court concludes there is a high risk that the lack of pre-deprivation process—that is, notice of any alleged release violations and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

**c) Government Interest**

As to the third *Mathews* factor, "as many other courts have

recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. Accordingly, the Court orders Petitioner's forthwith release and prevents his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine him.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring

Petitioner (A220-181-828) immediate release and restoration of liberty to the conditions existing prior to his detention on July 24, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED

Dated: November 23, 2026

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE